## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

GARY BOYD, BOYD MEDICAL INC.,    )
CHARLES WETHERILL, and    )
ADDISON MEDICAL, INC.,    )
        )
      **Plaintiffs,**    )
        )
vs.    )    **Case No. 07-cv-0751-MJR**
        )
TORNIER, INC., and    )
NEXA ORTHOPEDICS, INC.,    )
        )
      **Defendants.**    )

## ORDER AND MEMORANDUM

**REAGAN, District Judge:**

### A.  Background and Introduction

Currently before the Court is Tornier's motion to dismiss (Doc. 27).  Plaintiffs Boyd Medical and Addison Medical are distributors,[1] which contracted with Tornier to sell Tornier's orthopedic medical devices in certain regions of the United States.  In 2003, the parties entered into separate contracts through which Boyd Medical became Tornier's exclusive distributor in Illinois, Missouri, and Kansas, and Addison Medical became Tornier's exclusive distributor in Iowa.[2]  In exchange, Boyd Medical and Addison Medical agreed not to distribute certain devices or products from Tornier's competitors.  The agreement provided that it would last one year, and that either party could terminate the agreement at the end of the term by giving 30-days notice.  If neither party

---

[1]  Plaintiffs Boyd and Wetherill are employees of Boyd Medical and Addison Medical, respectively.

[2]  Boyd Medical's Agency Agreement with Tornier was effective as of March 13, 2003 (Doc. 2, ¶ 10; Doc. 28-3).  Addison Medical's Agency Agreement was effective as of June 2, 2003 (Doc. 28-2).

terminated it, the agreement would automatically renew for successive one-year terms. However, Tornier also had the right to terminate the agreement upon written notice at the end of any quarter in which the distributor failed to reach the projected sales quota, as set by Tornier.

In fact, Tornier terminated its agreements with Boyd Medical and Addison Medical in May 2007, on the grounds that each had failed to meet its first quarter quota that year. In 2007, Tornier also purchased Nexa Orthopedics, which develops and manufactures orthopedic devices. Tornier opted to use Nexa's distributors after terminating its agreements with Boyd Medical and Addison Medical.

On October 31, 2007, Plaintiffs filed this lawsuit against Tornier alleging Breach of Contract (Counts 1 and 5), Fraud in the Inducement (Counts 2 and 6), and Negligent Misrepresentation (Counts 3 and 7). Plaintiffs also sued Nexa for Tortious Interference with a Business Relationship (Counts 4 and 8).[3]

Tornier filed a partial motion to dismiss on January 11, 2008 (Doc. 27). Plaintiffs submitted a response on February 13, 2008 (Doc. 35), and Tornier submitted a reply on February 22, 2008 (Doc. 41). Having fully reviewed the parties' filings, the Court hereby **GRANTS IN PART AND DENIES IN PART** Tornier's motion to dismiss (Doc. 27).

## B. Analysis

### 1. Standards Governing a Motion to Dismiss

Dismissal is warranted under **Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE** if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." ***Bell Atlantic Corp. v. Twombly*, --U.S.--, 127 S.Ct. 1955, 1965 (2007);** ***EEOC v.***

---

[3] Defendants Archway Medical, Inc. and James O'Day were voluntarily dismissed without prejudice on November 7, 2008 (Doc. 73).

*Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

Stated another way, the question on a Rule 12(b)(6) motion is whether the complaint gives the defendant fair notice of what the suit is about and the grounds on which the suit rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Mosely v. Board of Education of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). Additionally, although federal complaints need only plead claims, not facts, the pleading regime created by *Bell Atlantic* requires the complaint to allege a plausible theory of liability against the defendant. *Sheridan v. Marathon Petroleum Co., LLC*, 530 F.3d 590, 596 (7th Cir. 2008); *see also Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803-04 (7th Cir. 2008).

In *Tamayo v. Blagojevich*, the Seventh Circuit emphasized that even though *Bell Atlantic* "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required. 526 F.3d 1074, 1083 (7th Cir. 2008). "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.*; *Accord Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) ("surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the allegations "must be enough to raise a right to relief above the speculative level").

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Tricontinental Industries, Inc., Ltd. v. PriceWaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 357 (2007); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006); *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989).

## 2. Scope of the Motion

Generally, the Court may only consider the Plaintiffs' complaint when ruling on a motion under **Rule 12(b)(6)**, and matters outside the pleadings, if not excluded, may convert the motion to one for summary judgment under Rule 56. **FED.R.CIV.PRO. 12(d)**. However, **Rule 10(c)** provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," and the law of this Circuit provides that **Rule 10(c)** "includes a certain limited class of attachments to Rule 12(b)(6) motions." *Rosenblum v. Travelbyus.com Ltd.*, **299 F.3d 657, 661 (7th Cir. 2002).** The Seventh Circuit has explained:

> "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." Wright v. Assoc. Ins. Cos. Inc., 29 F.3d 1244, 1248 (7th Cir. 1994). This exception is "aimed at cases interpreting, for example, a contract." Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998). "The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." 5 Wright & Miller, Federal Practice & Procedure: Civil 2d, § 1327 at 766 (1990).

*Id.*

Tornier attached the Agency Agreements underlying the Plaintiffs' breach of contract claims to its motion to dismiss (Docs. 28-2 & 28-3). The Court properly considers these contracts in resolving the instant motion to dismiss, as the agreements are specifically referred to throughout the complaint and are central to Plaintiffs' claims. Moreover, the Court notes that Plaintiffs make no objection to the authenticity of the contracts, and their contents are not in dispute.

### 3. Plaintiffs' Breach of Contract Claims

#### a. Governing Law

As a federal court exercising diversity jurisdiction, this Court applies federal law in resolving procedural and evidentiary issues, and Illinois law with respect to substantive law. ***Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir. 2006) (citing *Colip v. Clare*, 26 F.3d 712, 714 (7th Cir. 1994)).** As such, this Court applies Illinois's choice-of-law rules to determine the applicable substantive law. ***See Hinc v. Lime-O-Sol Company*, 382 F.3d 716, 719 (7th Cir. 2004); *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1184 (7th Cir. 1996)**. Illinois follows the **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** in making such decisions. ***Midwest Grain Products of Illinois, Inc. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000)**.

For contracts claims, the Restatement and Illinois law respect a contract's choice-of-law clause as long as the contract is valid. ***Kohler*, 80 F.3d at 1185.** In this case, the parties' contracts include choice-of-law provisions, which provides that the contracts "shall be construed and determined in accordance with the laws of the State of Texas." **Doc. 28-2, ¶ 10.12; Doc. 28-3, ¶ 10.12.** As the parties do not contest the contracts' validity, the Court applies Texas law to Plaintiffs' breach of contract claims.

In Counts 1 and 5, Plaintiffs claim that Tornier breached its agreements because it (1) breached its promise that Plaintiffs would be the exclusive distributors of Tornier products in their assigned regions, (2) breached its duty of good faith and fair dealing by establishing 2007 quotas that were unreasonable and unattainable, and (3) failed to pay commissions and compensation for returned samples.[4] Plaintiffs seek a variety of remedies including, but not limited

---

[4] Plaintiffs argue in their response that the complaint also alleges that Tornier breached the agreements by failing to provide adequate notice of termination. While Plaintiffs do allege

to, lost profits, lost wages, and punitive damages.

Tornier asks this Court to dismiss the breach of contract claims based on the exclusivity clause, and the duty of good faith and fair dealing. Additionally, Tornier argues that certain remedies that Plaintiffs seek are unavailable under Texas law. Tornier's motion does not challenge Plaintiffs' claim that Tornier failed to properly pay commissions and reimburse them for returned samples.

It is well-settled under Texas law that the elements necessary to prove a claim for breach of contract are (1) the existence of a valid contract, (2) plaintiff's performance or tendered performance of the contract, (3) defendant's breach of the contract, and (4) plaintiff's damages. *Bank of Texas v. VR Elec., Inc.*, -- S.W.3d --, 2008 4075594, *4 (Tex. App. Sept. 4, 2008).

### b. Breach of the Exclusivity Provisions

Tornier argues that the Agency Agreements and Plaintiffs' complaint contradict the claim that Tornier breached the exclusivity provisions in the agreements. Typically, where a supplier agrees that a distributor has exclusive rights to distribute a product, the promise of

---

facts that could *potentially* relate to such claims (*see* Doc. 2, ¶¶ 21 & 23), at no time does the complaint indicate that Plaintiffs were not timely notified of termination or that a lack of timely notice created a breach of contract. Additionally, Plaintiffs claim that their breach claims also include the allegation that Plaintiffs were on track to attain their 2007 quotas. Though the complaint does allege that Plaintiffs were on track to attain their 2007 quotas, the complaint cannot logically be read to include this allegation a basis for the breach of contract claims. The complaint specifically states that Tornier could terminate the agreements at the end of any quarter in which the projected minimum sales had not been attained (Doc. 2, ¶ 19). The agreements confirm this allegation (Docs. 28-2, 28-3, ¶ 9.3). Accordingly, an allegation that Tornier terminated the agreement despite the fact that Plaintiffs were on track to reach their year-end quotas is irrelevant to the breach of contract claim. On the other hand, an allegation that Tornier terminated the agreement even though Plaintiffs actually met their quarterly quotas would be cognizable as a breach of the contract at issue. But Plaintiffs do not claim that they met their quarterly quotas. As a result, Plaintiffs have not sufficiently pled breach of contract claims so as to rely upon these particular allegations.

exclusivity is breached when, in the course of the contract, the supplier permits a second entity to distribute the product. Here, Plaintiffs appear to claim that the exclusivity provisions were breached by the simple fact of Tornier's termination of their Agency Agreements, which is really nothing more than a generalized breach of contract claim.

Rather than arguing that Tornier directly breached the exclusivity provision, it actually appears that Plaintiffs attempt to argue that Tornier's wrongful termination of the contract deprived them of the benefit of their bargain, which included the valuable right to exclusively distribute Tornier's products in their assigned regions. This appears to be the case, especially in light of the complete absence of any specific argument in Plaintiffs' response that it has pled facts sufficient to state a plausible claim for relief that Tornier breached the exclusivity provisions by any manner other than wrongful termination. Instead, Plaintiffs argue that the facts alleged in complaint are sufficient to support a general breach of contract claim upon a variety of separate theories unrelated to the exclusivity provision (*see supra* fn. 4).

If Plaintiffs do intend to seek recovery for the direct breach of the exclusivity provisions, the claim fails to state a claim under the allegations contained in the complaint. Paragraph 1.1 of each Agency Agreement (Docs. 28-2, 28-3, ¶ 1.1) provides

> Company hereby appoints Agent as exclusive representative of the Products . . . in the Territory and agrees, for the term and subject to the provisions of this Agreement, that all Products sold in the Territory will be sold through the Agent.

In other words, so long as the contract remained in effect, Plaintiffs were to be the exclusive distributors of Tornier products in their assigned sales territories.

However, the only factual allegation to support a breach of the exclusivity provisions is that "subsequent to Addison's termination by Tornier, [Archway] replaced Addison as Tornier's

exclusive distributor in Iowa" (Doc. 2, ¶ 28). That particular allegation is unrelated to Boyd Medical or Gary Boyd, and, in any case, it also reveals that any actual replacement of Plaintiffs as a distributor occurred only after the termination of the agreement. As a result, the claim that "Tornier has breached its promise of exclusivity by terminating [Plaintiffs'] distributorship[s]" must be an indication of the severity of Plaintiffs' loss—not an allegation that the exclusivity provision itself was directly breached by any other distributor's competition with Plaintiffs during the term of the contract.

Accordingly, the Court dismisses Plaintiffs' claims that Tornier specifically breached the exclusivity provisions, and instead regards these allegations as indicating the nature and extent of Plaintiffs' damages.

### c. Breach of the Duty of Good Faith and Fair Dealing

Plaintiffs also claim that Tornier breached its duty of good faith and fair dealing by establishing quarterly quotas in 2007 that were unreasonable and unattainable. According to the complaint, this duty arises from Tornier's requests that Plaintiffs "terminate all other product lines and expend substantial sums to build and maintain the Tornier business" (Doc. 2, § 33). Tornier argues that under Texas law, no such duty exists here.

Texas law only implies the duty of good faith with respect to contract claims under its Uniform Commercial Code (UCC). **TEX. BUS. & COMM. CODE ANN. § 1.304.** However, the Agency Agreements between Tornier and Plaintiffs do not fall under the UCC, as they are contracts for services rather than for goods. Thus, any claims for the breach of the duty of good faith and fair dealing under a contract theory must fail.

Texas law also recognizes a claim for breach of the duty of good faith and fair dealing as a common law tort action arising from an underlying contract. ***Cole v. Hall*, 864 S.W.2d 563,**

**568 (Tex. App. 1993);** *see Central Sav. & Loan Ass'n v. Stemmons Northwest Bank, N.A.*, **848 S.W.2d 232, 238 (Tex. App. 1992) ("At common law, the breach of the duty of good faith and fair dealing gives rise to a tort cause of action and the right to recover both actual and punitive damages.").** In Texas, tort claims for the duty of good faith and fair dealing are cognizable only in limited circumstances[5] and have "only been applied to protect parties who have a special relationship based on trust or unequal bargaining power." *GTE Mobilnet of So. Tex. Ltd. P'ship v. Telecell Cellular, Inc.*, **955 S.W.2d 286, 295 (Tex. App. 1997).**

However, if Plaintiffs intended to raise the duty of good faith and fair dealing as a tort claim, Texas law is irrelevant. As discussed below, Illinois's choice-of-law rules place the parties' tort claims under either Missouri or Iowa law (*see infra* section B(5)(a)). Both Tornier and Plaintiffs are obviously confused about which legal theory is raised by the complaint, as they each analyze the issue as a tort under Texas law. As Plaintiffs have not attempted to address the claim under Missouri or Iowa law, the Court is convinced that Plaintiffs intended to raise the duty of good faith and fair dealing as part of their contract claim, rather than as a separate tort claim. And as already explained, such a claim fails under Texas's law of contracts.

Despite Plaintiffs' attempts to tie allegations to an independent breach of the duty of good faith, it is abundantly clear that the crux of Plaintiffs' "good faith" claim is that Tornier set unreasonable quarterly quotas in 2007. Indeed, Plaintiffs' complaint states "Tornier breached the Agency Agreement by establishing 2007 quotas that were unreasonable and unattainable on a quarterly basis" (Doc. 2, ¶ 33). Though the complaint is by no means a model of clarity, it is

---

[5] Under Texas law, "[t]here is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* **960 S.W.2d 41, 52 (Tex. 1998);** *South Plains Switching, Ltd. Co. v. BNSF Ry. Co.*, **255 S.W.3d 690, 702 (Tex. App. 2008)**.

apparent that Plaintiffs sought to raise a breach of contract claim on the basis that Tornier's alleged conduct made it impossible for Plaintiffs to perform and was intended to make the contract fail. The complaint sufficiently, though inartfully, states a breach of contract claim on these grounds. But since the parties have not briefed this issue, the Court declines to address it further.

Accordingly, the Court grants the motion to dismiss insofar as it seeks to dismiss Plaintiffs' claims for breach of the duty of good faith and fair dealing. As a result, that claim is dismissed with prejudice. However, the Court notes that Plaintiffs do raise a separate claim for breach of contract on the grounds that Tornier intentional conduct in setting unattainable quotas made it impossible for Tornier to perform, and thereby caused the contract to fail.

### d.  Punitive Damages, Lost Profits, and Lost Wages

Next, Tornier argues that Texas law does not permit recovery of punitive damages, lost profits, and lost wages in a breach of contract claim. Because Plaintiffs concede that punitive damages are not recoverable, the Court dismisses Plaintiffs' claims for punitive damages with respect to their breach of contract claims

Tornier also argues that lost profits and lost wages are unavailable under the Agency Agreements' limitation of liability provisions. Paragraph 9.6 provides: "Upon termination of this Agreement, neither party shall be liable to the other for any loss of profits of any kind or nature sustained or arising out of such termination" (Docs. 28-2, 28-3, ¶ 9.6).

Under Texas law, limitation of liability clauses are generally enforceable, so long as they are not contrary to public policy. ***Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 748 (Tex. App. 2005)**. The Court of Appeals of Texas has explained that this inquiry is fact-based.

> In determining whether a limitation of liability clause is unconscionable or against public policy, courts generally consider the entire atmosphere in which the agreement was made, the bargaining

-10-

process the parties went through, and whether there is such a disparity in bargaining power between the parties that one party is forced to agree to the exculpatory provision.

*Mireles v. Tejas Appraisal & Inspection Co.*, 2007 WL 1826074, *1 (Tex. App. June 27, 2007) (citing *Head*, 159 S.W.3d at 748; *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex. App. 1996)). However, the mere existence of unequal bargaining power alone is not sufficient to defeat a limitation of liability provision, as it is the unfair use of that power that undermines the contract. *Grewal v. Hickenbottom*, 2003 WL 22295373, *4 (Tex. App. Oct. 8, 2003) (quoting *Holeman v. Nat'l Bus. Inst. Inc.*, 94 S.W.3d 91, 99 (Tex. App. 2001)).

Plaintiffs have alleged various facts that might support the argument that the parties' bargaining power was unequal as it relates to the limitation of liability provision. For the purposes of this motion, the Court accepts these allegations as true. Because it is necessary to make certain factual determinations in order to fully assess whether Tornier unfairly used its alleged unequal bargaining power, resolution of this issue is not appropriate at this stage.

Accordingly, the Court dismisses Plaintiffs' claims for punitive damages with respect to their breach of contract claims with prejudice, but denies Tornier's motion to dismiss Plaintiffs' claims for lost profits and lost wages.

## 5. Plaintiffs' Tort Claims

### a. Governing Law

As noted above, this Court applies Illinois's choice-of-law rules to determine the applicable substantive law. In determining which state's law applies to Plaintiffs' tort claims against Tornier, the Court "select[s] the law of the jurisdiction that has the 'most significant relationship' to the events out of which the suit arose, and to the parties." *Carris v. Marriott International Inc.*,

**466 F.3d 558, 560 (7th Cir. 2006) (citing *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)).**

The law of the place where the injury occurred is presumed to apply unless another state has a more significant relationship to the occurrence or parties. ***Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 527 (7th Cir. 1981); *see Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999).** In determining whether another state has a more significant relationship to the occurrence or parties, the Court may also consider (1) the place where the injury causing conduct occurred, (2) the domicile of the parties, and (3) the place where the relationship of the parties is centered. *Pittway Corp.*, **641 F.2d at 527.**

   In this case, the tort claims against Tornier are fraud in the inducement and negligent misrepresentation. The place of the injury as to these claims are the same as the domiciles of each Plaintiff. Their distributorships are centered in these states, and their sales territories are comprised of these states. Plaintiffs Boyd and Boyd Medical are residents and citizens of Missouri, so this Court will apply Missouri law to their tort claims. Plaintiffs Wetherill and Addison Medical are residents and citizens of Iowa, so this Court will apply Iowa law to their tort claims.

### b.  Plaintiffs' Fraud Claims

   Tornier argues that Plaintiffs' fraud in the inducement claims (Counts 2 and 6) are not pled with particularity as required by **FEDERAL RULE OF CIVIL PROCEDURE 9(b)**. Rule 9(b) provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Seventh Circuit has explained that Rule 9(b) requires that the allegations of fraud must include "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." ***Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financing Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v.***

*Lease Resolution Corp.*, **128 F.3d 1074, 1089 (7th Cir. 1997)).** In other words, the complaint must

contain the "who, what, when, and where" of the alleged fraud. *DiLeo v. Ernst & Young*, **901 F.2d**

**624, 627 (7th Cir. 1990).**

Plaintiffs' complaint alleges that Tornier, through its employee Rick Carrow, made

five specific representations that Plaintiffs allege are fraudulent (Doc. ¶¶ 40, 71). According to the

complaint, the representations were both verbal and written, though there is no indication as to

which particular representations were verbal rather than written, or vice versa. Additionally, it is

not clear when each particular representation was made, as Plaintiffs' complaint simply alleges that

Carrow made these statements "throughout [the parties'] dealings and negotiations" (Doc. 2, ¶¶ 40,

71).[6] That time frame is extremely broad, especially in light of the fact that the parties' relationship

spanned a period of approximately four years and included multiple contract renewals. Also,

Plaintiffs make the same generalized allegations as to when and how Carrow made representations

to Boyd Medical and Addison Medical, despite the fact that each apparently dealt separately and

independently with Carrow.

As a result, the Court is compelled to find that Plaintiffs' allegations of fraud (Counts

2 and 6) have not been pled with particularity as required by Rule 9(b). Accordingly, the Court

dismisses Plaintiffs' claims for fraud in the inducement.

### c. Wetherill's and Addison's Negligent Misrepresentation Claims (Count 7)

With respect to Wetherill's and Addison Medical's claims of negligent

misrepresentation (Count 7), Iowa law follows the **RESTATEMENT (SECOND) OF TORTS § 552**,

---

[6] Plaintiffs make little effort to clarify the issue in their response, wherein they state that "Carrow's representations . . . were made during the time period from 2003, when the parties' commercial relationship began, up through May 2007, when Tornier wrongfully terminated Boyd Medical and Addison as its agents" (Doc. 35, p. 11).

which provides:

> One who, in the course of his business, profession or employment or in any other transaction in which he has a pecuniary business, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Jacobs v. City of Iowa City*, **2004 WL 433738, \*4 (Iowa App. Ct. 2004) (citing *Freeman v. Ernst & Young*, 516 N.W.2d 835, 837 (Iowa 1994)).** However, Iowa courts apply this standard narrowly such that "liability for negligent misrepresentation arises only when the information is provided by persons in the business or profession of supplying information to others." *Id.* **(citing *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 492 (Iowa 2000)).**

> The Supreme Court of Iowa explained that

> when deciding whether the tort of negligent misrepresentation imposes a duty of care in a particular case, we distinguish between those transactions where a defendant is in the business or profession of supplying information to others from those transactions that are arm's length and adversarial. . . . We recognize the former circumstances justify the imposition of a duty of care because a transaction between a person in the business or profession of supplying information and a person seeking information is compatible to a special relationship. . . . On the other hand, information given gratuitously or incidental to a different service imposes no such duty.

*Sain v. Cedar Rapids Cmty. School Dist.*, **626 N.W.2d 115, 124 (Iowa 2001).** Factors indicating that a party is in the business of supplying information include "whether they are engaged in supplying guidance to others in a non-adversarial capacity" and "whether the information was part of the product provided by the business." *Lee County v. IASD Health Serv. Corp.*, **2000 WL 290367, \*9 (Dist. Iowa 2000) (finding that a negligent misrepresentation claim was actionable**

**against an insurance provider where plaintiffs paid an administrative fee for monthly statements regarding the types of insurance available and recommendations as to which plans would best serve them).**

Here, Plaintiffs do not allege that Tornier was in the business of supplying information. And even drawing all reasonable inferences in Wetherill's and Addison Medical's favor, the Court is unable to construe Plaintiffs' allegations as factors that would support such a claim. The allegations in the complaint recount a relationship that was of a commercial nature, with yearly opportunities for contract renewal pursuant to the terms of the Agency Agreement. Accordingly, there is nothing in the complaint that would support a claim for negligent misrepresentation under Iowa law.

Consequently, Wetherill's and Addison Medical's negligent misrepresentation claims (Count 7) must be dismissed.

### d. Boyd's and Boyd Medical's Negligent Misrepresentation Claims (Count 3)

This leaves Boyd's and Boyd Medical's claims against Tornier for negligent misrepresentation. These Plaintiffs allege that Tornier negligently made the following misrepresentations:

     a.     That if Boyd Medical dropped all other competing medical devices, product lines and customers it would remain as its exclusive distributorship; and

     b.     That Tornier would set quotas at a level that would be attainable; and

     c.     That Tornier would support Boyd Medical by making available new products, marketing materials and training opportunities on a timely basis; and

     d.     That if Boyd Medical continued to attain quota it would become a national distributor of Tornier products; and

     e.     Encouraging Boyd Medical to expend substantial sums in an effort to increase revenues including but not limited to hiring additional staff in reliance on Tornier's promise of continued

business.

To raise an actionable claim for negligent misrepresentation under Missouri law, a claimant must show that

> (1) the speaker supplied information in the course of his or her business because of some pecuniary interest; (2) due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of the listener's reliance on the statement, the listener suffered a pecuniary loss.

***M & H Enterprises v. Tri-State Delta Chemicals, Inc.*, 35 S.W.3d 899, 904 (Mo. App. Ct. 2001)**

Tornier argues that Plaintiffs cannot plausibly claim that they justifiably relied on any of the alleged representations, because the terms of the Agency Agreement contradicts each of them. Additionally, the agreement includes an integration clause, stating:

> This agreement is intended to be the sole and complete Agreement between the parties and supercedes and replaces all prior writings or understandings between the parties with respect to the Products. Any amendment, modification or waiver of this Agreement shall be in writing.

(Docs. 28-2, 28-3, ¶ 10.1). In light of this clause, Tornier characterizes Plaintiffs' negligent representation claim as an attempt to add new terms to the agreement.

Two of the alleged misrepresentations are contradicted by the terms of the agreement. First, Plaintiffs' claim that Tornier told Boyd Medical it would remain the exclusive distributor if Boyd Medical dropped all other product lines, devices, and customers is an issue clearly dealt with by the parties' contract. At Paragraph 1.4, the Agency Agreement provides that Boyd Medical "will not promote, advertise, distribute, or sell other prescription medical devices, which devices are substantially similar to the products set out in Appendix I" unless Tornier gave written consent.

Other portions of the contract permitted either party to terminate the agreement within 30 days of the end of the contract term without precondition (Doc. 28-3, ¶ 9.1) and permitted Tornier to terminate if Boyd Medical did not meet quarterly quotas (Doc. 28-3, ¶ 9.3).

The dropping of other customers and product lines was obviously an issue only prior to the parties' initial agreement in 2003. Thereafter, Boyd Medical exclusively distributed Tornier products and had no other clients to retain or drop with respect to any subsequent renewals. As a matter of law, Plaintiffs cannot reasonably rely on a statement that is superseded by a written integrated agreement. In light of the express terms of the agreement permitting termination under other circumstances, Plaintiffs cannot have reasonably relied on any prior statement by Tornier that Boyd Medical would remain an exclusive distributor if it simply dropped competing products. Accordingly, this particular claim must be dismissed.

Additionally, Plaintiffs' allegation that Tornier misrepresented its promise that Boyd Medical would become a national distributorship if it continued to attain its quotas must be dismissed, because it is unsupported by the complaint's allegations and partially contradicts the terms of the Agency Agreement. The agreement provides that Tornier could terminate if Boyd Medical failed to meet its quarterly quotas (Doc. 28-3, ¶ 9.3). Boyd Medical cannot plausibly claim justifiable reliance when the contract itself provides for termination of the parties' entire relationship for failure to meet quarterly quotas. Boyd Medical does not contend that it met its quarterly quota in the first quarter of 2007, but rather that it was on track to meet its yearly quota. Moreover, the alleged misrepresentation makes satisfaction of these quotas a condition for national distribution. Because Plaintiffs have not pled that they fulfilled the stated condition upon which this representation was based, it is not clear how this particular misrepresentation is causally connected to any damages. Accordingly, this claim must be dismissed.

However, none of the other alleged misrepresentations are contradicted by the agreement or the allegations in the complaint. The allegation that Tornier represented that it would set attainable quotas is not specifically addressed by the agreement. Such a representation could plausibly have led to Boyd Medical's reasonable reliance, in that it believed continued renewal of the agreement offered a level of risk that justified expected rewards, because any quotas set would be realistic.[7]

Next, the allegation that Tornier misrepresented to Plaintiffs that it would provide new products, training, and marketing materials is also actionable, based on the pleadings and the contract. As Tornier freely admits, the contract itself contains at least some degree of representation that such services either would or could be provided (Doc. 28-3, ¶¶ 6.1, 6.3, 10.7). Additionally, Plaintiffs point to an Agency Manual they claim also represents that such training would be provided. Though the Court declines to consider the manual, as it is not clearly central to Plaintiffs' claims (*see* discussion *supra* section B.2), Plaintiffs have indicated that a fact question exists here. Thus, resolution of this issue is more appropriate for consideration at the summary judgment stage.[8]

Plaintiffs' also allege that Tornier encouraged Boyd Medical to expend substantial sums in reliance on an expectation of continued business. However, Tornier argues that the Agency Agreement itself required Boyd Medical to hire additional employees and pay for expenses when

---

[7] Additionally, it is possible that "attainable quotas" are required by the contract itself as an implied term, because if Tornier were permitted to set unattainable quotas, the contract might be illusory. However, the parties have not briefed that issue and the Court need not make any determination on that basis.

[8] Tornier also attacks this alleged misrepresentation on the grounds that the complaint never specifically alleges that Tornier failed to provide training or new products. However, Plaintiffs' complaint alleges that Tornier represented that it would provide training and new products, and that this representation was false. The Court finds the allegation of falsity sufficient to state a claim under the lenient notice pleading requirements.

necessary to support the Tornier product line (*See, e.g.*, Doc. 28-3, ¶ 1.3). Because such expenditures are required by the contract, Tornier argues that Plaintiffs cannot claim that any further encouragement on Tornier's part constitutes a misrepresentation. But while the contract certainly addressed the hiring of employees, Plaintiffs' claim is clearly not limited to that issue. The Court finds that the resolution of this issue requires an examination of facts regarding the extent of any suggestion by Tornier that Boyd Medical should make expenditures in return for continued renewals. Accordingly, this claim cannot be disposed of at the 12(b)(6) stage.

### e.  Recoverable Damages in Count 3

Finally, Tornier argues that Plaintiffs cannot establish damages for expenditures above and beyond what the contract required. However, Tornier essentially relies on the same arguments it used in attempting to get this claim dismissed: that the Agency Agreement already required Tornier to make these expenditures. Tornier's argument is unavailing with respect to damages for the same reasons discussed above.

Tornier also argues that lost profits are unavailable because the Agency Agreement prohibits the recovery of lost profits (Doc. 28-3, ¶ 9.6). However, the limitation of liability clause only prohibits the recovery of lost profits arising out of the termination of the agreement. While Plaintiffs' misrepresentation claims may, in some cases, relate to the agreement itself, it is not clear that these claims arise out of the termination of the agreement. In any case, neither party has briefed this issue under Missouri law, and thus, the Court declines to consider the argument at this time.

### C.  Conclusion

Accordingly, the Court hereby **GRANTS IN PART AND DENIES IN PART** Tornier's motion to dismiss (Doc. 27).

The motion is **GRANTED** insofar as the Court **DISMISSES** Plaintiffs' claim that

Tornier specifically breached the contract's exclusivity provisions **without prejudice**.  The Court also **DISMISSES** Plaintiffs' claims for breach of the duty of good faith and fair dealing **with prejudice**, and **DISMISSES** Plaintiffs' claims for punitive damages with respect to their breach of contract claims **with prejudice**.  Additionally, the Court **DISMISSES** Plaintiffs' fraud in the inducement claims in their entirety **without prejudice** (Counts 2 and 6).  Wetherill and Addison Medical's negligent misrepresentation claims are also **DISMISSED without prejudice** (Count 7).  Finally, the Court **DISMISSES** Boyd and Boyd Medical's claims for negligent misrepresentation with respect to the allegations that (1) Boyd Medical would remain Tornier's exclusive distributor if Boyd Medical dropped competing customers and (2) Boyd Medical would become a national distributorship if it continued to attain its quotas **without prejudice**.

However, the Court **DENIES** Tornier's motion to dismiss other breach of contract claims.  Indeed, the Court notes that allegations supporting Plaintiffs' "breach of good faith" claim include an allegation that Tornier breached contract by setting quotas that made it impossible for Tornier to perform.[9]  The Court also **DENIES** Tornier's motion to dismiss insofar as the Court declines to dismiss the claims for lost profits and lost wages as sought in connection with Plaintiffs' contract and tort claims.  Additionally, the Court **DENIES** Tornier's motion to dismiss Plaintiffs' negligent misrepresentation claims that (1) Tornier would set attainable quotas, (2) Tornier would provide Plaintiffs with training and new products on a timely basis, and (3) Tornier would continue renewing the agreements if Plaintiffs made certain expenditures to promote Tornier's products.

The Court also **NOTIFIES** that parties that in the near future, the Court will issue an abbreviated pre-trial schedule, providing Plaintiffs a final opportunity to amend their complaint,

---

[9]  The Court notes that, at this time, Tornier does not challenge Plaintiffs' allegations that Tornier breached contract by failing to pay certain commissions and reimbursements.

and setting new deadlines for submitting any dispositive motions.

**IT IS SO ORDERED.**

**DATED this 20th day of January 2009.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**