# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GARY BOYD, BOYD MEDICAL INC., CHARLES WETHERILL, and ADDISON MEDICAL, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 07-cv-0751-MJR ) |
| TORNIER, INC., and NEXA ORTHOPEDICS, INC., | ) ) ) |
| Defendants. | ) |

## ORDER AND MEMORANDUM

**REAGAN, District Judge:**

      Currently before the Court is Nexa Orthopedics's motion to dismiss (Doc. 42). Plaintiffs Boyd Medical and Addison Medical are distributors,[1] which contracted with Tornier to sell Tornier's orthopedic medical devices in certain regions of the United States. In 2003, the parties entered into separate contracts through which Boyd Medical became Tornier's exclusive distributor in Illinois, Missouri, and Kansas, and Addison Medical became Tornier's exclusive distributor in Iowa.[2] In exchange, Boyd Medical and Addison Medical agreed not to distribute certain devices or products from Tornier's competitors. The agreement provided that it would last one year, and that either party could terminate the agreement at the end of the term by giving 30-days notice. If neither party terminated it, the agreement would automatically renew for successive one-year terms.

---

[1] Plaintiffs Boyd and Wetherill are employees of Boyd Medical and Addison Medical, respectively.

[2] Boyd Medical's Agency Agreement with Tornier was effective as of March 13, 2003 (Doc. 2, ¶ 10; Doc. 28-3). Addison Medical's Agency Agreement was effective as of June 2, 2003 (Doc. 28-2).

However, Tornier also had the right to terminate the agreement upon written notice at the end of any quarter in which the distributor failed to reach the projected sales quota, as set by Tornier.

Like Tornier, Nexa Orthopedics was also in the business of developing, manufacturing, and marketing orthopedic medical devices. On February 12, 2007, Tornier purchased Nexa. In April 2007, Tornier notified Plaintiffs that it planned to terminate its Agency Agreements with each of them on the grounds that each failed to meet its first quarter quota that year. The parties' relationships with Tornier did in fact terminate on May 31, 2007. Thereafter, Tornier hired Archway Medical, one of Nexa's distributors, to replace Addison as Tornier's exclusive distributor in Iowa.

On October 31, 2007, Plaintiffs filed this lawsuit against Nexa[3] alleging Tortious Interference with a Business Relationship (Counts 4 and 8). Nexa filed a motion to dismiss on April 28, 2008 (Doc. 42). Having fully reviewed the parties' filings, the Court hereby **GRANTS IN PART AND DENIES IN PART** Nexa's motion to dismiss (Doc. 42).

### B. Analysis

**1. Standards Governing a Motion to Dismiss**

Dismissal is warranted under **Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE** if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." ***Bell Atlantic Corp. v. Twombly*, --U.S.--, 127 S.Ct. 1955, 1965 (2007)**; ***EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).**

Stated another way, the question on a Rule 12(b)(6) motion is whether the complaint gives the defendant fair notice of what the suit is about and the grounds on which the suit rests.

---

[3] Defendants Archway Medical, Inc. and James O'Day were also named as Defendants, but Plaintiffs voluntarily dismissed them without prejudice on November 7, 2008 (Doc. 73).

*Swierkiewicz v. Sorema N.A.*, **534 U.S. 506, 512 (2002);** *Mosely v. Board of Education of City of Chicago*, **434 F.3d 527, 533 (7th Cir. 2006).** Additionally, although federal complaints need only plead claims, not facts, the pleading regime created by *Bell Atlantic* requires the complaint to allege a plausible theory of liability against the defendant. *Sheridan v. Marathon Petroleum Co., LLC*, **530 F.3d 590, 596 (7th Cir. 2008);** *see also Limestone Dev. Corp. v. Village of Lemont, Ill.*, **520 F.3d 797, 803-04 (7th Cir. 2008).**

In *Tamayo v. Blagojevich*, the Seventh Circuit emphasized that even though *Bell Atlantic* "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required. **526 F.3d 1074, 1083 (7th Cir. 2008).** "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Id.*; *Accord Pugh v. Tribune Co.*, **521 F.3d 686, 699 (7th Cir. 2008) ("surviving a Rule 12(b)(6) motion requires more than labels and conclusions"; the allegations "must be enough to raise a right to relief above the speculative level").**

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Tricontinental Industries, Inc., Ltd. v. PriceWaterhouseCoopers, LLP*, **475 F.3d 824, 833 (7th Cir. 2007),** *cert. denied*, **128 S. Ct. 357 (2007);** *Marshall v. Knight*, **445 F.3d 965, 969 (7th Cir. 2006);** *Corcoran v. Chicago Park District*, **875 F.2d 609, 611 (7th Cir. 1989).**

**2. Governing Law**

As a federal court exercising diversity jurisdiction, this Court applies federal law in resolving procedural and evidentiary issues, and Illinois law with respect to substantive law. *Bevolo v. Carter*, **447 F.3d 979, 982 (7th Cir. 2006) (citing** *Colip v. Clare*, **26 F.3d 712, 714 (7th Cir.**

**1994))**. As such, this Court applies Illinois's choice-of-law rules to determine the applicable substantive law. *See* ***Hinc v. Lime-O-Sol Company*, 382 F.3d 716, 719 (7th Cir. 2004);** ***Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1184 (7th Cir. 1996)**. Illinois follows the **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** in making such decisions. ***Midwest Grain Products of Illinois, Inc. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000)**.

In determining which state's law applies to Plaintiffs' tort claims against Nexa, the Court "select[s] the law of the jurisdiction that has the 'most significant relationship' to the events out of which the suit arose, and to the parties." ***Carris v. Marriott International Inc.*, 466 F.3d 558, 560 (7th Cir. 2006) (citing *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996))**. The law of the place where the injury occurred is presumed to apply unless another state has a more significant relationship to the occurrence or parties. ***Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 527 (7th Cir. 1981);** *see* ***Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999).** In determining whether another state has a more significant relationship to the occurrence or parties, the Court may also consider (1) the place where the injury causing conduct occurred, (2) the domicile of the parties, and (3) the place where the relationship of the parties is centered. ***Pittway Corp.*, 641 F.2d at 527.**

Neither party has offered any choice of law explanation whatsoever in briefing the instant motion to dismiss.[4] From the pleadings, it appears that the situs of Plaintiffs' injuries from the alleged tortious interference is the same as the domicile of each Plaintiff. Indeed, Plaintiffs'

---

[4] Nexa's analysis simply refers to Missouri and Iowa law. Plaintiffs, on the other hand, claim that Texas law applies to their claims and makes general references to Nexa's motion for summary judgment in support of this position. However, the Court declines to consider the arguments therein, because the motion for summary judgment refers to facts outside the pleadings.

businesses are located in these states and their operations were run there. And Addison Medical's exclusive distributorship only serviced Iowa counties. Thus, the complaint indicates that the injury occurred in Plaintiffs' domiciles.

Plaintiffs Boyd and Boyd Medical are residents and citizens of Missouri, so this Court will apply Missouri law to their tort claims. Plaintiffs Wetherill and Addison Medical are residents and citizens of Iowa, so this Court will apply Iowa law to their tort claims.

### 3.  Plaintiffs' Tortious Interference Claims

In Missouri, the elements of claim of tortious interference with a business relationship are: "(1) a contract; (2) defendant's knowledge of the contract; (3) intentional interference by the defendant inducing or causing a breach of the contract; (4) absence of justification; and (5) damages resulting from defendant's conduct." ***Guidry v. Charter Communications, Inc.*, 269 S.W.3d 520, 535 (Mo. App. Ct. 2008).** The elements under Iowa law are essentially the same. ***Educational Technology, Ltd. v. Meinhard*, 2001 WL 488088, \*6 (Iowa App. Ct. 2001) (unpublished) (citing *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 763 (Iowa 1999)).**

Plaintiffs claim that Nexa tortiously interfered with its business relationship with Tornier in three ways:

> a. Directly and intentionally contacting Tornier and encouraging it not to do business with [Plaintiffs] and/or to do business directly with Nexa; and
> b. Entering into an acquisition agreement with Tornier thereby eliminating [Plaintiff's] distributorship with Tornier; and
> c. Making disparaging comments regarding Plaintiffs' reputation and/or services to Tornier. (Doc. 2, ¶¶ 57 & 88).

Additionally, Boyd claims that Nexa tortiously interfered with its relationship with Nexa by "[e]ncouraging Boyd Medicals' employees and sales people to leave Boyd and work for O'Day and Archway Medical" (Doc. 2, ¶ 57(d)).

### a. Encouraging Tornier to Work Directly with Nexa

First, Nexa argues that the allegation that it encouraged Tornier to do business directly with Nexa cannot support Plaintiffs' tortious interference claims, because Nexa is not a distributor. In other words, Nexa argues that encouraging Tornier to "do business directly with Nexa" could not plausibly induce Tornier to breach its contracts with Plaintiffs because Nexa does not offer competing services. In response, Plaintiffs argue that Nexa's business included a distribution network and Nexa's conduct was intended to induce Tornier to terminate its agreements with Plaintiffs and replace them with Nexa's distributors.

While the complaint is not entirely clear on this point, the Court draws all reasonable inferences in Plaintiffs' favor. In doing so, the Court finds that the context and totality of the allegations narrowly support Plaintiffs' argument. Whether Nexa's business includes a tie to distribution, either through its own services or through a network of related distributors, is a question of fact not suitable for resolution under Rule 12(b)(6). Accordingly, Nexa's motion is denied as to this point.

### b. The Effect of Tornier and Nexa's Acquisition Agreement on Plaintiffs

Next, Nexa attacks the allegation that it tortiously interfered with Plaintiffs' relationship with Tornier by "entering into an acquisition agreement with Tornier thereby eliminating [Plaintiffs'] distributorship." Nexa again claims that because it was not a distributor, Tornier's acquisition of Nexa did not affect the Plaintiffs' Agency Agreements. Plaintiffs argue that because the acquisition obviously left Tornier with multiple distributors covering Plaintiffs' exclusive territory, the acquisition does have a causal relationship to Tornier's termination of their distributorships.

Again, the complaint suffers from a lack of clarity on this point, but drawing

reasonable inferences from the allegations as a whole, Plaintiffs' claim does not warrant dismissal on this basis.  The Court understands Plaintiffs' claim to be that Nexa's negotiations with Tornier included attempts to have its preferred distributors, such as Archway, brought in as replacements for Plaintiffs.  Completion of the agreement, according to Plaintiffs, sealed Plaintiffs' fate because it brought competing distributors into their exclusive sales territories.  Though Plaintiffs appear to be stretching on this point, these factual allegations state a plausible claim that Nexa's acquisition agreement, coupled with other factors, resulted in Nexa's tortiouis interference with Plaintiffs' and Tornier's relationship.  To be sure, Plaintiffs will be required to present specific evidence supporting this contention at a later stage.  But at this time, the pleadings are sufficient to withstand Nexa's motion to dismiss.

### c.  Whether Tornier Actually Breached the Agency Agreements

Nexa also argues that because Tornier did not breach its agreements with Plaintiffs, Nexa cannot be held liable for tortious interference.  However, for reasons discussed in the Court's previous Order (Doc. 91), Plaintiffs have raised cognizable breach of contract claims against Tornier. Consequently, Nexa's argument as to this basis for dismissal is misplaced.  Neither Tornier nor Nexa has provided the Court with any reason why the breach of contract claims must be entirely dismissed at this point.  Thus, the Court declines to dismiss Plaintiffs' tortious interference claims on this ground.

### d.  Nexa's Absence of Justification for Interfering due to Improper Means

Additionally, Nexa argues that under Missouri law, Boyd Medical's claim must fail because its claim relies on the allegations that Nexa encouraged Tornier not to do business with Boyd Medical and made "disparaging comments regarding plaintiffs' reputation and/or services to Tornier." According to Nexa, these claims involve opinions, which do not create an actionable basis

-7-

for a tortious interference claim.

This argument relates to the requirement under Missouri law that a plaintiff must show that a defendant lacked justification for its interference with the business relationship at issue. In establishing this prong of a tortious interference claim, Missouri courts require plaintiffs to show that a defendant used improper means. **Clinch v. Heartland Health, 187 S.W.3d 10, 16–17 (Mo. App. Ct. 2006) (discussing *Nazeri v. Missouri Valley College*, 860 S.W.2d 303 (Mo. banc 1993)).** "Improper means include misrepresentation of fact, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or the common law." **Kruse Concepts, Inc. v. Shelter Mut. Ins., 16 S.W.3d 734, 738 (Mo. App. Ct. 2000).** Here, Boyd Medical essentially alleges that Nexa used the improper means of misrepresentation of fact or defamation to satisfy the justification element. However, as Nexa notes in its motion, such allegations must rely on statements of fact rather than opinions. **Clinch, 187 S.W.3d at 17 (citing *Kruse*, 16 S.W. 3d at 738; *William v. Dooner*, 770 S.W.2d 275, 278 (Mo. App. Ct. 1989)).**

"Whether a particular statement is fact or opinion is a question of law," and the "determination is based on the totality of circumstances." *Id.* However, at this juncture it is unclear as to what the particular statements comprising the alleged misrepresentation of fact or defamation were. The complaint makes only general allegations regarding the alleged improper means. Accordingly, the Court finds that this determination is better suited for resolution at the summary judgment stage.

### e. Nexa's Solicitation of Boyd Medical's Employees for Archway

Nexa also attacks the allegation that it tortiously interfered with Boyd Medical's agreement with Tornier by "[e]ncouraging Boyd Medical's employees and sales people to leave Boyd and work for O'Day and Archway Medical." Nexa argues that anything it allegedly

communicated to Boyd Medical's employees is irrelevant to the claim that Nexa interfered with Boyd Medical's contract with Tornier. The Court agrees. A tortious interference claim requires a showing that defendant's conduct interfered with plaintiff's contract with a third party. The third party identified in Count 4 of Boyd Medical's complaint is Tornier. But the complaint includes nothing that could plausibly show a link between any such solicitation of Boyd Medical's employees and interference with Boyd Medical's contract with Tornier. There is not even an allegation that Nexa succeeded in luring Boyd Medical's employees away, much less that any such success affected Boyd Medical's relationship with Tornier. As a result, the Court must dismiss Boyd Medical's tortious interference claim (Count 4) to the extent that it relies on the allegation that Nexa encouraged Boyd Medical's employees to work for Archway.

### f. The Viability of Gary Boyd's and Charles Wetherill's Claims

Finally, Nexa argues that Plaintiffs Gary Boyd and Charles Wetherill's tortious interference claims fail because, as employees of Boyd Medical and Addison Medical, neither had individual contractual relationships with Tornier. Plaintiffs Boyd and Wetherill concede this point and admit that their individual tortious interference claims (Counts 4 and 8) must be dismissed.

### C. Conclusion

For the reasons thoroughly explained above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Nexa's motion to dismiss (Doc. 42).

The motion is **GRANTED** insofar as the Court **DISMISSES** Plaintiffs Gary Boyd and Charles Wetherill's tortious interference claims against Nexa Orthopedics (Counts 4 and 8) **with prejudice**. Additionally, the Court **PARTIALLY DISMISSES** Boyd Medical's tortious interference claim insofar as it relies on the allegation that Nexa encouraged Boyd Medical's employees to quit and work for Archway Medical (Count 4) **without prejudice**. However, the

-9-

Court **DENIES** Nexa's motion to dismiss in all other respects.

The Court also **NOTIFIES** that parties that in the near future, the Court will issue an abbreviated pre-trial schedule, providing Plaintiffs a final opportunity to amend their complaint, and setting new deadlines for submitting any dispositive motions.

**IT IS SO ORDERED.**

**DATED this 20th day of January 2009.**

>**s/ Michael J. Reagan**
>**MICHAEL J. REAGAN**
>**United States District Judge**